T.C. Memo. 1995-456


UNITED STATES TAX COURT


WORLD OF SERVICE, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


FEELIN' GREAT, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 4338-87, 4341-87.    Filed September 26, 1995.


Chris H. Johnson, an officer, for petitioners.

<u>Michael A. Pesavento</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in and additions to petitioners' corporate income tax as follows:

World of Service, Inc.--Docket No. 4338-87

| | | Additions to Tax | | |
|------|------------|----------------|----------------|--------|
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(a)(1) | 6653(a)(2) | 6661 |
| 1982 | $21,848 | $1,092 | [1] | $5,462 |
| 1983 | 79,134 | 3,957 | [1] | 19,784 |
| 1984 | 88,404 | 4,420 | [1] | 22,101 |

[1] 50 percent of the interest due on the deficiency.

Feelin' Great, Inc.--Docket No. 4341-87

| | | Additions to Tax | | |
|------|------------|----------------|----------------|--------|
| | | Sec. | Sec. | Sec. |
| FYE | Deficiency | 6653(a)(1) | 6653(a)(2) | 6661 |
| 1983 | $160,895 | $8,045 | [1] | $40,224 |
| 1984 | 74,039 | 3,702 | [1] | 18,010 |

[1] 50 percent of the interest due on the deficiency.

After the parties' concessions, the issues remaining for our consideration are: (1) Whether petitioners have shown that they are entitled to various deductions in excess of the amounts allowed by respondent; and (2) whether petitioners are liable for additions to tax under sections 6653(a)(1) and (2) and 6661.[1]

FINDINGS OF FACT[2]

Petitioners, World of Service, Inc. (Service), and Feelin' Great, Inc. (Great), are Florida corporations, and Chris H. Johnson (Mr. Johnson) was president of each corporation at all relevant times. At all relevant times, Mr. Johnson and his wife,

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to this Court's Rules of Practice and Procedure.

[2] The parties' stipulation of facts and exhibits are incorporated by this reference.

Vickie L. Johnson, jointly owned 100 percent of the stock of Service. Personal Elegance (Elegance) was 100 percent jointly owned by the Johnsons, and Elegance, in turn, owned 100 percent of Great. Each petitioner had its principal place of business in Florida at the time of the filing of the petition. Mr. Johnson had earned an associate's degree[3] in tax and accounting.

Great provided educational services and seminars about nutrition. Service provided business and computer services to Great and to a related corporation. Service was on the accrual method of accounting for Federal tax purposes and filed on a calendar year basis. Great was also on the accrual method of accounting for Federal tax purposes, yet filed on the basis of a fiscal year ending (FYE) July 31.

Mr. Johnson had been associated with Glen Turner (Turner), who, through seminars, promoted self-improvement. Turner also promoted and franchised his operations during the 1960s and 1970s. After Turner had legal difficulties, Mr. Johnson continued on his own in the same field, beginning around 1975. Mr. Johnson established Elegance, a company that marketed specialty gifts. That operation developed into the 1980 formation of Great, which held seminars on "self-improvement" and marketed vitamins, nutritional products, health care products, exercise programs, and the like.

---

[3] We assume this was a 2-year, rather than a 4-year, college degree.

In the early 1980s, Great's business area covered the States of Florida, Georgia, and Alabama. By 1982, Great was operating (i.e., holding seminars) in about 26 States. Throughout the years in controversy, Service's principal place of business was in the Johnsons' residence. The Johnsons' residence, a three-bedroom condominium, contained 1,600 square feet of usable space, of which 320 square feet was used exclusively for Service's business purposes. In addition, the Johnsons' two-car garage contained 300 square feet, with an equal amount of attic storage area above the garage. Of the 600 total square feet of combined garage area, 400 square feet was used exclusively for business purposes. The Johnsons' residential telephone was listed in Service's name. Service's checks contained the Johnsons' residence address. During this period, Great had a separate principal place of business and office in a commercial location outside of the Johnsons' residence.

Service paid the Johnsons' residential mortgage payments of $5,043 and $5,400 during 1982 and 1983, respectively. Service deducted $1,443 and $1,800 on its 1982 and 1983 income tax returns for use of the Johnsons' residence. For those same years, the Johnsons reported $3,600 in income for Service's use of the residence, because the mortgage was paid by Service. Respondent determined that only 10 percent of the residence was used for business purposes and disallowed the mortgage and other

deducted expenditures related to the condominium in excess of 10 percent.

Service also deducted $2,101, $2,178, and $5,018, and respondent disallowed $1,284, $1,362, and $3,403 for 1982, 1983, and 1984, respectively. These deductions were for utilities, trash removal, pest control, telephone, etc. The largest portion of these amounts was attributable to telephone expenses.

Service made the following expenditures, which were deducted in the tax year paid and were disallowed by respondent as being without a business purpose:

| Date | Payee | Amount |
|------|-------|--------|
| 05/19/82 | Baby Safety Industries | $225 |
| 10/03/82 | Dicker & Dicker of Beverly Hills | 1,915 |
| 11/08/83 | Dicker & Dicker of Beverly Hills | [1]15,020 |

[1] Only $14,154 of this amount was included in Service's cost of goods sold.

Four different styles of mink coats had been purchased from Dicker & Dicker of Beverly Hills, a furrier. Some of the fur coats were used by Great for business purposes; however, petitioners have failed to show that the coats purchased during 1982 or 1983 were used for business purposes. A "Wanda chair" had been purchased from Baby Safety Industries to be given, as a gift, to the owner of a company from which Service was to obtain technology for its computer operations.

Service leased a Mercedes-Benz automobile, paying $915 per month. During 1983 and 1984, Service deducted, and respondent

disallowed for lack of a business purpose, the auto lease payments in the total amounts of $11,347 and $11,151, respectively. This automobile was used, in part, for business and, in part, for personal purposes. For 1982, 1983, and 1984, Service deducted, and respondent disallowed for lack of business purpose, $2,631, $2,513, and $8,717 of expenditures in connection with the maintenance and operation of a 1977 Eldorado. During the period under consideration, three automobiles were used by the Johnsons in connection with the businesses: The 1977 Eldorado, the leased Mercedes-Benz, and a 1980 Buick. The automobiles were used for both business and personal purposes.

During 1983, Service purchased a beach condominium (beach condo) for about $140,000. Improvements and furnishings of approximately $20,000 to $22,000 were added. The Johnsons occasionally used the beach condo for personal use. Service claimed $1,057 for 1983 as "Mortgage Service Expense", and the claimed amount consisted of loan prepayments, transfer stamp tax, and related fees in connection with the purchase of the beach condo. Respondent disallowed the amount for lack of a business purpose. Service, in connection with the beach condo, deducted $7,186 and $410 for 1983 and 1984, respectively, for decorating. Of the $7,186, $1,904 was allowed by respondent because it was for decorating corporate offices, and the remainder of these amounts, which involved the beach condo,

were disallowed for lack of a business purpose.  Service, for 1984, paid and deducted other amounts connected with the beach condo, which respondent disallowed.  For 1984, Service deducted $1,362 as association fees, part of which was for the beach condo and part of which was for the Johnsons' residence. Respondent allowed $57, representing 10 percent business use of the residence, and the remainder was disallowed for lack of a business purpose.

For 1982, Service deducted the amount of certain MasterCard charges that were designated as "Seminar Training Program Costs" and disallowed by respondent for lack of a business purpose.  For 1982, 1983, and 1984, Service deducted $2,172, $2,008, and $1,797 for dues, subscriptions, and memberships, including the annual condominium fee of $720 for the Johnsons' residence.  Respondent, asserting the lack of a business purpose, disallowed $2,076, $1,903, and $1,732 of the these amounts (10 percent of the condominium fees were allowed).

Service deducted $6,891, $8,800, and $7,694 for automobile insurance expenses, and respondent disallowed, for lack of a business purpose, $6,801, $8,470, and $7,609 (10 percent of the fees that related to the condominium were allowed).

Service also deducted for the years 1982, 1983, and 1984 travel, meals, lodging, convention, and entertainment expense amounts totaling $8,671, $6,276, and $19,443, and respondent disallowed, for lack of a business purpose, all but $180 for

the 1984 year.  Mr. Johnson did extensive traveling on behalf of the corporations in connection with the promotional activity.  He would travel, entertain, and incur expenses that were paid with either a credit card or cash.  After 1, 2, or sometimes 3 months' accumulation of receipts, Mr. Johnson would go through the receipts and mark their purpose.  All of the Johnsons' bills, both personal and business, were paid by the corporations.  At the end of each year, the amount for a particular category (e.g., gasoline) would be totaled, and Mr. Johnson would make a judgment call about the percentage of business and personal use of that item.

Service deducted and respondent disallowed for lack of a business purpose $858 and $2,222 for 1982 and 1983 as medical expenses and insurance for the Johnsons.  For 1984, Service deducted (as a bonus) and respondent disallowed (for lack of a business purpose) the purchase of 30,000 shares of stock in the name of the Johnsons' minor child for $4,500.  Mr. Johnson testified that the $4,500 was part of reported compensation from Service to him, yet no substantiation was provided to support Mr. Johnson's testimony.

For 1984, Service deducted, as a bad debt, $56,000, which amount comprised loans to Linda Krabill, Kent Oaks, and Ed Rector.  Some of the loans had been made in 1984 and some in 1985, but all were claimed to have been made in 1984.  Linda Krabill was an interior decorator who worked for the Johnsons

when they decorated the beach condo. The Johnsons lent her approximately $45,000 of corporate funds because she was having financial difficulties. Mr. Johnson's instructor-trainer (personal trainer), Kent Oaks, was also having financial difficulties, and Mr. Johnson lent him about $2,500. Finally, Ed Rector was a person Mr. Johnson had met in connection with Glen Turner's activities. Mr. Rector, who was then involved in litigation, borrowed over $10,000 from Mr. Johnson. No efforts were made to collect these loans during the years under consideration. Respondent disallowed these items due to Mr. Johnson's failure to show that they were debts and that they became worthless.

For 1982, Service deducted $7,190 for fees incurred in representing the Turner family children's trust, of which Mr. Johnson was trustee, before the Internal Revenue Service. Respondent disallowed the deduction for lack of a business purpose. For 1983, Service deducted $5,194 for fees, of which $2,777 was disallowed for lack of business purpose because it represented fees for a partition suit by Mrs. Johnson. For 1984, Service deducted $32,185 of legal fees, and respondent disallowed $14,988, as representing some personal legal matters of Mrs. Johnson and Ed Rector.

Service, for 1982, 1983, and 1984, deducted depreciation totaling $7,130, $11,773, and $25,197, and respondent disallowed $5,430, $10,073 and $24,397 as attributable to

nonbusiness property (including a General Motors Corp. (GMC) truck, 1980 Buick, copper sculpture, and the beach condo). The GMC truck had been purchased with the intent to use it in the Service and Great businesses; however, it was not suitable. Mr. Johnson allowed the GMC truck to be used on a farm by his father, which was not shown to be for a business purpose of Service. Mr. Johnson's father purchased gasoline with an AMOCO gasoline credit card in the general vicinity of his home in Dunn, North Carolina, for personal use of the GMC truck.

Service, for 1982, 1983, and 1984, claimed net operating loss carryover deductions from 1981 in the amounts of $143,814, $134,401, and $30,851, respectively, and respondent disallowed them because the 1981 tax year, after controversy and settlement by the parties, resulted in an income tax deficiency and no amount of carryover loss. Service, for 1984, claimed investment tax credit carryovers from 1982 and 1983 in the amounts of $659 and $2,226, respectively, which respondent disallowed as being attributable to nonbusiness property (a GMC truck and beach condo furniture).

Great, for its FYE July 31, 1983, treated $5,000 as part of its cost of goods sold for the purpose of making copies of 24 promotional tapes. The old tapes had become worn from use. Great, for 1982, included $39,627 as part of its cost of goods sold, for convention expenses, and respondent disallowed $158 as not being an ordinary and necessary business expense.

Great deducted $166,162 and $105,905 for its FYE July 31, 1983 and 1984, for film and video fees. These deductions were allegedly for inspirational films that had been made by individuals, such as Vince Lombardi. Great's deduction was based on an alleged agreement, under which Great was to pay 3 percent of sales for the rental of the films. Because Great was on the accrual method of accounting, the amounts were projected, and deductions were taken on Great's tax returns. Some of the films were otherwise available and were in the public domain. Rights to the films were allegedly in a company in Barbados. Great did not make any payments with regard to the alleged film rentals. Respondent disallowed these amounts because they were not incurred. Great, for its years ended July 31, 1983 and 1984, deducted $330,536 and $529,321 for seminars, and respondent disallowed $10,907 and $17,468, respectively. Respondent's agent was not provided with any documentation for the seminar deductions for the years at issue. The agent concluded that 96.7 percent was allowable in each year based on prior years' audit experience where documentation was provided and audited. Petitioners did not provide documentation at trial that would show that respondent's determination was in error.

Great, for its FYE July 31, 1983, deducted $170,147 for travel, meals, and entertainment. Respondent reviewed $65,298.85 of the claimed amount and disallowed $19,382.46, or

about 30 percent of the sample reviewed. Respondent overlooked the travel deduction for the FYE July 31, 1984, and made an error with respect to the FYE July 31, 1983, travel adjustment. Respondent's agent sampled or reviewed $65,298.85 of the $170,147 deducted for travel. The review resulted in a 30-percent disallowance rate, which the agent mistakenly applied to the $65,298.85 sample rather than the $170,147 amount claimed. For its FYE July 31, 1983 and 1984, Great deducted interest expenses in the amounts of $60,101 and $40,474, and respondent disallowed $56,516 and $28,800, respectively. The majority of the disallowance was attributable to a transaction involving Tipuani Limited Partners (Tipuani). Petitioners did not show that interest was paid in connection with the Tipuani transaction. The remainder of the claimed interest was attributable to payments on debt secured by the company airplane, which respondent allowed. Great had reported income in connection with Tipuani, and respondent reduced the $212,000 reported to $125,000. The income was attributable to forgiveness of indebtedness regarding promissory notes to Tipuani.

For its FYE July 31, 1983, Great deducted $9,654 as bad debts, and respondent disallowed $4,800 as already having been deducted as professional fees, insurance, etc. For its FYE July 31, 1983 and 1984, Great deducted $126,771 and $227,915 for airplane and pilot fees, and respondent disallowed $812 of

the 1983 amount for lack of substantiation and business purpose. For 1982 and 1983, Great deducted $530,667 and $351,983 in net operating loss carryover deductions from the FYE July 31, 1982. Respondent disallowed the claimed loss deductions because Great had been the subject of an audit for years prior to those now before the Court. In a case involving the prior years which was pending before this Court, the same net operating losses were eliminated due to the parties' agreed settlement. Great had agreed to an income tax deficiency, rather than a loss, in the earlier case.

## ULTIMATE FINDINGS OF FACT

1. Service, for each of its 3 taxable years, is entitled to deduct 20 percent of the costs and expenses connected with the business use of the Johnsons' residence (condo) including the utilities, with the exception of the cost of telephone service, for which Service is entitled to deduct 75 percent for 1982 and 1983 and 100 percent for 1984. Service is also allowed to deduct 20 percent of the condominium association fees, rather than the 10 percent allowed by respondent.

2. Service is not entitled to deduct any expenses, depreciation, or other claimed amounts connected with the beach condo, including decorating and furnishing expenditures and association and condo fees. The $1,057 that Service claimed for 1983 as "Mortgage Service Expense" for closing costs on the beach condo is not deductible.

3.   The Mercedes-Benz, Buick, and Eldorado automobiles were used one-half for business and one-half for personal purposes during the years in controversy.  One-half of the amounts claimed by Service for depreciation, gasoline, and repairs and maintenance of those automobiles is deductible.  It has not been shown that any portion of disallowed claimed foreign travel was deductible for business purposes of Service or Great.

4. The GMC truck was not used for business purposes during the years in controversy.  No depreciation or tax credits are allowable for the GMC truck.  Gasoline purchased with the AMOCO credit card within North Carolina is not deductible because it was purchased for the personal use of the GMC truck by Mr. Johnson's father.

5.   Service purchased a Wanda chair from Baby Safety Industries for $225 as a gift for a business purpose.  That amount is deductible for Service's 1982 tax year.

6.   It has not been shown that the fur coats purchased from Dicker & Dicker of Beverly Hills during 1982 or 1983 were for a deductible business purpose.

7.   Petitioners have not shown that they are entitled to any of the claimed net operating loss deductions or tax credit carryovers for the taxable years under consideration.

8. It has not been shown that the $4,500 that Service deducted for stock purchased in the name of the Johnsons' minor child was purchased for a business purpose.

9. The $56,000 that Service paid to Linda Krabill, Kent Oaks, and Ed Rector, claimed as bad debts for 1984, were all nonbusiness personal loans. It has not been shown that those loans were uncollectible as of the end of the taxable year 1984. No part of the $56,000 is deductible for the 1984 tax year.

10. It has not been shown that the legal fees claimed by Service are allowable in amounts greater than those allowed by respondent.

11. Service has not shown that it is entitled to the $1,063 deduction for "Seminar Training Program Costs" during 1982.

12. Service has not shown that it is entitled to the deductions of $2,172, $2,008, and $1,797 claimed for 1982, 1983, and 1984 for "Dues & Subscriptions and Memberships and Tuitions".

13. Of the $6,891, $8,800, and $7,694 claimed for "Automobile and Automobile Insurance" for 1982, 1983, and 1984, Service is entitled to deduct 20 percent of the homeowner's insurance on the Johnsons' residence and an additional $1,000 each year for auto insurance.

14. Service has not shown that it is entitled to any portion of the $8,671, $6,276, and $19,264 of the expenses for "Travel

Meals & Lodging and Convention and Entertainment" disallowed by respondent for 1982, 1983, and 1984, respectively.

15. Service has not shown that it is entitled to deduct $858 and $2,222 for 1982 and 1983 for "Medical Benefits Insurance".

16. Great is entitled to deduct the $5,000 incurred in making copies of promotional tapes.

17. Great is not entitled to deduct the $166,162 and $105,905 for its FYE July 31, 1983 and 1984, claimed for film rentals.

18. Great has not shown that it is entitled to deduct seminar expenses for its FYE July 31, 1983 and 1984, in amounts greater than $319,629 and $511,853, respectively.

19. Great has not shown that it is entitled to deduct travel expenses for its FYE July 31, 1983, in excess of the $150,764.54 allowed by respondent.

20. Great has not shown that it is entitled to deduct, for its FYE July 31, 1983 and 1984, interest expense in excess of $3,585 and $11,674, respectively.

21. Great, for its FYE July 31, 1983, is not entitled to deduct bad debts in excess of the $4,854 allowed by respondent.

22. Great has not shown that it is entitled to deduct in excess of the $39,469 that it claimed for its FYE July 31, 1983, for "Convention Expenses".

23. Great has not shown that it did not realize income from forgiveness of indebtedness due to the cancellation of promissory notes due to Tipuani.

24. Great has not shown that it is entitled to the $812 of aircraft and pilot fees disallowed by respondent for the FYE July 31, 1983.

25. Petitioners failed to keep adequate records of their deduction items.

## OPINION

Regarding those items on which the parties could not settle, the trial of this case covered 5 taxable years of the two corporate petitioners. Numerous deduction items were in controversy, and we have reviewed the record with respect to each of them and made specific and ultimate findings for each. In this portion of the opinion, we express the standards under which petitioners' controverted items were judged, and we analyze and make additional ultimate findings regarding the additions to tax with respect to both petitioners.

Petitioners bear the burden of proving that they are entitled to the deductions claimed, or of showing that respondent erred in the determination. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In addition, petitioners are required to maintain adequate records to substantiate their claimed deductions. Sec. 6001. Petitioners were closely held corporations owned and operated by the Johnsons. The

businesses marketed and promoted family seminars about "self-improvement", vitamins, nutritional products, health care, and exercise programs.  There was a substantial amount of travel involved.  Petitioners, for one reason or another, did not have complete documentation on numerous items.  For example, a receipt that shows the purchase of gasoline might not indicate whether the expenditure was one for business or personal.  Compounding these problems was the practice of causing petitioner corporations to pay both their business and the Johnsons' personal expenditures, which were accumulated and divided by estimations at yearend.

The trial evidence consisted of two major components:  (1) The documentation used by respondent's agent during the audit, and (2) Mr. Johnson's testimony (which petitioners offered to expand on situations where the documents fell short).  Mr. Johnson was, in several instances, unable to distinguish items in the available documentation without further information; this information was not forthcoming.  In this regard, testimony of a controlling shareholder involving corporate activities has been carefully scrutinized.  Alterman Foods, Inc. v. United States, 505 F.2d 873, 877 (5th Cir. 1974).[4]

---

[4] The U.S. Court of Appeals for the Eleventh Circuit has adopted, as binding precedent, decisions of the U.S. Court of Appeals for the Fifth Circuit issued prior to Oct. 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

Most of the claimed deductions were disallowed by respondent due to petitioners' lack of business purpose. In that regard, section 162 governs the deductibility of business expenses. It allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business". To be "ordinary" the expense must have a reasonably approximate relationship to the operation of a taxpayer's trade or business. Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 660 (1962). To be "necessary" the expense must be appropriate or helpful. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). A shareholder's personal expenses are not ordinary and necessary expenses of the corporation. Pantages Theater Co. v. Welch, 71 F.2d 68 (9th Cir. 1934); Challenge Manufacturing Co. v. Commissioner, supra at 650.

It was argued that petitioners' and the Johnsons' expenses were properly segregated and that the corporations did not deduct the Johnsons' personal items, which were "backed-out" and which the Johnsons reported as income. References were made to worksheets containing the segregations, but none were offered or received in our record.

Respondent raised the question of whether Service met the requirements for both section 280A (business use of home) and the holding of Commissioner v. Soliman, 506 U.S. __, 113 S. Ct. 701 (1993). However, we have found that Service's principal

place of business was in the Johnsons' residence.  Service is not an S corporation and, accordingly, it is unnecessary to analyze this matter under the standards of section 280A(c)(1)(A).

With respect to petitioners' claims for bad debts, section 166 permits a deduction for a debt that becomes worthless during the taxable year.  Zimmerman v. United States, 318 F.2d 611, 612 (9th Cir. 1963).  Only a bona fide debt, arising from a "debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money", qualifies for a deduction under section 166.  Sec. 1.166-1(c), Income Tax Regs.  Whether a bona fide debtor-creditor relationship exists is a question of fact to be determined after consideration of all the facts and circumstances.  Fisher v. Commissioner, 54 T.C. 905, 909 (1970).

Although notes were executed in connection with the amounts given to various individuals, petitioners have not shown that a genuine debtor-creditor relationship existed between Service and any of the alleged borrowers.  In most instances, the loans were made through the corporation to friends or acquaintances of the Johnsons.  When the amounts were not repaid, even though there was "evidence of indebtedness", Mr. Johnson did not want to pursue collection from friends.  Under those circumstances, where the sole shareholder(s) of a corporation cause a

corporation to give corporate funds to the shareholder's friend(s) from whom they would not seek formal collection, it is difficult to find that there was a true debtor-creditor relationship. Just as significantly, petitioners have failed to show that the advances were worthless during the years the bad debt deductions were claimed.

Respondent determined additions to tax under section 6653(a)(1) and (2) and section 6661 for each taxable year in issue. Section 6653(a)(1) provides for a 5-percent addition on the entire underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an additional amount equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.

Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioners have the burden of showing that their underpayment was not due to negligence or intentional disregard of rules or regulations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Both petitioners failed to maintain adequate records. The failure to properly segregate personal and business expenditures and the method of yearend allocation further exacerbate the inadequacy of petitioners' records. It was the

Johnsons' and petitioners' choice to mix personal and business records, and their failure or inability to properly show the division is of their own making and was clearly negligent. Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Crocker v. Commissioner, 92 T.C. 899, 917 (1989).

Further, petitioners claimed, up until the eve of trial, amounts which had been conceded in prior proceedings. Claiming hundreds of thousands of dollars in net operating loss deductions, when those matters had been finally settled in earlier years' litigation, cannot be considered reasonable or what an ordinarily prudent person would do. Although petitioners' returns were prepared by accountants, the Johnsons made all judgments regarding personal or business decisions, and they labeled various amounts for inclusion in the corporate returns. We also note that Mr. Johnson has an associate's degree in tax and accounting.

Under these circumstances, petitioners have failed to show that respondent's determination was in error; hence, we find that petitioners are liable for additions to tax under section 6653(a)(1) and (2).

Respondent determined that petitioners are liable for an addition to tax under section 6661 for all taxable years in dispute. Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a

substantial understatement of income tax.  An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or, in the case of a corporate taxpayer, $10,000.

If an item is not attributable to a tax shelter, then any understatement may be reduced by amounts attributable to items for which a taxpayer had substantial authority or which were adequately disclosed in the return (e.g., by attaching a statement thereto).  Sec. 6661(b)(2)(B)(i) and (ii).

Petitioners have not shown that there was substantial authority for their tax treatment of any of the adjustments determined by respondent.  In addition, we find that petitioners did not adequately disclose any of the adjusted items on the returns for the period in controversy. Accordingly, to the extent that petitioners' understatement, for any taxable period under consideration, is substantial within the meaning of section 6661, petitioners are liable for the addition to tax under section 6661. To reflect the foregoing and to reflect concessions and agreements of the parties,

Decisions will be entered

under Rule 155.